Good afternoon, Mr. Abberley. Yes, Abberley, yes sir. And Mr. Phillips. Yes, your honor. Welcome to the Fifth Circuit. Thank you. Thank you. Judge Dennis and I can keep from disappearing. Judge Dennis, together with Judge Higginson and Judge Costa, we are your panel for this first case. United States of America v. Miguel Alfonso Morris. We'll hear first from Mr. Abberley, if I'm pronouncing that correctly. Abberley, close enough. Yes, I am Christopher Abberley and I'm court appointed counsel for Mr. Miguel Morris, who in this appeal challenges both his guilty plea and his sentence. The sentence in this case, the issue involves a novel legal question which the court may want to address, but the issue is straightforward. And this court will not need to reach that issue if it agrees that the search, the seizure of the drugs in this case violated the Fourth Amendment. That issue is more consequential one for Mr. Morris. So unless the court directs otherwise, I will focus my argument on our challenge to the ruling on the motion to suppress. Now to support the government's contention that the stop and the encounter leading up to the giving of consent was a mere consensual casual police citizen contact, the government had to clear two hurdles in the district court. And we contend that it stumbled in both cases. The first hurdle is the initial stop. The government argued and the district court found, and I quote the district court, a reasonable person would have felt free to continue driving. Now, despite the reference to driving, the district court relied for this conclusion on cases that involve police approaching a car who was already parked before the police even interjected themselves in the situation. In other words, in those cases, unlike in this case, the police did not cause the defendant to stop his moving vehicle. That makes this case different because the law regarding moving vehicles is different. Here, Mr. Morris was driving his car and while he may have been driving slowly and in a parking lot, the officers could not interact with him unless the car stopped. No less so than if he was driving 70 miles an hour on the interstate. So here, Mr. Morris stopped his car only because two uniformed police officers unambiguously signaled him to do so. And we contend there, therefore, under Mendenhall and Delaware v. Prowse, Morris was subject to an automobile stop, just as though if he had been pulled over on the interstate. And just like a stop on the interstate or any traffic stop, it is irrelevant, contrary to what the district court found, that once stopped, the defendant's car was not physically restrained from leaving. In short, the police conducted a Terry stop of Mr. Morris, which could only be justified by reasonable suspicion. So, counsel, let me ask about, assume for argument's sake that the initial waving down or stopping of the vehicle was a seizure, as you say. I'm just focused on that initial stop. The reasonable suspicion, I think the government points to the fact that it's a high drug area, that stop where he was parked. Two, he's parked back with the 18 wheelers. And three, he starts driving. Well, his car has never really turned off. And then he starts driving when the officers are approaching. So talk to me about whether those three things give rise to reasonable suspicion. And if you're familiar with our flowers case from a few months ago, where there's a car parked outside a convenience store. I mean, to me, this seems like more more suspicious grounds that the government's asserted than you had in flowers where the car was just really parked briefly outside a convenience store. So if you can address that. Sure. In flowers, which was a split decision. The court held that the that the parked car was for the district court found that the park car was parked in a way that the men, the two men in it did not appear to be patronizing the establishment. That's a fact you wouldn't have here because, you know, in a resting in a rest stop is, you know, there's no establishment. Second, the car, the, the court and flowers said that the car was parked in a manner of, let me quote them was parked in a manner that suggested to the seasoned officer that his occupants might be casing the store preparing to prey on its patrons. As indicated by the fact that there was a dissent in that case, the situation there, we contend with sort of sits on the line of what constitutes reasonable position suspicion based on where and how a car is parked. Mr. We think Mr. Morris's case plenty does not come as close to the line as it did in flowers. Morris was alone, nothing about the manner in which the car was parked suggested any impending criminality, and notably in flowers there was a this court distinguished. Contrary holding in in USP Hill from 2014 on several grounds and one of the grounds was and I quote. In Hill, the car was parked quote in a location where one would expect multiple cars to be parked, not in a suspicious spot as the only car in a convenience store lot. So we think that distinguishes flowers. But he is unusual and that there's a car parked back with the 18 wheelers, and I think maybe the, the innocent explanation for that would be well like those truck drivers, someone driving a car wants to take a nap as well and it's darker back there, as opposed to the regular parking lot. But then, isn't that dispelled by the fact that he's never really sleeping there because his cars on and then he starts moving as soon as the officers approach. Well, first of all we don't know how long it was there I mean whether he you know whether he had rested already or what. But, you know, if you're free to leave. And then you do so, and then you use that freedom to exercise that freedom to say there's reasonable suspicion. That just doesn't seem to be a good way to approach the analysis. Remind me procedurally did, did the district court have this hearing or was this in front of the magistrate. It was in front of the magistrate judge. And so I know Detective Thor expressly stated he didn't have suspicion. I mean that that was their entire testimony was we weren't he was we're just we're waving at and we don't have reasonable suspicion. But did the government then in any closing argument, also say, all we had here was a hunch we were just doing a little waving at I mean that's certainly the government's position in his brief does that this is a police waving quote at a citizen. So, it would seem to me the evidence, and the government's argument has actually been to negative reasonable suspicion, but tell me if I'm wrong about that. No, I would agree with that. And not just officer for but the, the other two deputies initially and both of them testified that they didn't have any reasonable suspicion that that. I suppose it doesn't matter what's in their mind but if the district court and the magistrate never got to it. No, they did not get to it, no finding was made in the district court about reasonable suspicion. If that's what you're asking. Yeah, just a little bit of a complication but I guess we'll hear from the government. Now, if, if the car was parked, if parking a car in the rest area of a truck stop is sufficient reason for stopping the car when it starts to drive away. We contend that the government surely stumbled at the next hurdle which is establishing that the continued encounter remain purely consensual up until the time that Mr. Morris exceeded the corporal Max repeated request to search the car, or alternatively, that any reasonable suspicion justifying the initial stuff had not dispelled by that time. Well the second time the second encounter you focus on is captured by a video right the body cam shows how they asked him to get out of the car. Yes. And they said, Do you mind, that sounds somewhat permissive. Right. But you take the totality of the situation in this case. You have, you have the two that the two officers have asked him questions he's asked them, he's answered them, then corporate Matt comes and ask the same questions. And then another 20 questions, and then we asked him to get out of the car. There's four officers there. They're all uniformed armed. It's late at night, it's dark it's in the behind a building. And, you know, Mr. Morris is a black Hispanic man. And after he's out of the car. Corporal Matt really goes Adam and makes it clear to my mind it's clear that he was basically telling Mr. Morris you're not free to leave until you let us search your car. I mean, the language used. And I'm quoting, the more you cooperate, the faster. He says keep your hands out of your pockets. The faster you cooperate, the faster will be done and I'll let you go about your way. And later, the more you cooperate, the faster we get done. Then, the faster you cooperate, the faster will be done with this. And finally, so if you want to go back to sleep. Let us know he was cut off at that point but it's clear he meant, let us search your car. We think, by that time, Mr. Morris could not possibly have felt free to leave. Now, if the search was initially supported by reasonable suspicion. We contend that that was dispelled. After they asked him questions he answered them satisfactorily. His driver's license came back clean. They searched his car with the flashlights and saw nothing there. I think at that point, they can no longer have a reason to continue to detain him. Now, if he, if the government clears both of those hurdles. They still have one more hurdle to go and that is whether the consent given was consensual was given. I'm sorry, given freely and voluntarily and we argue that that if, if the court gets to the, to this point, it should find that consent was not given freely and voluntarily. Now, we have argued that the six factors, the district court misapplied the six factors for determining consensual consent. In fact, we argued that not a single one of them supports the government's position here, but if you just focus on two of them, the voluntariness of the situation, and the use of coercive police procedure, those by themselves preclude a finding of free and voluntary consent, specifically and again against the backdrop of Mr. Morris asked to step out of his car in the night in the back, you know, in the dark, surrounded by foreign police officers. With Corporal Matt by his own concession, wearing down Mr. Morris by repeatedly conveying to him that his ability to be left alone was conditioned on his agreeing to his car being searched. And it's clear from the video that but for that coercive technique Mr. Morris would not have relented and allow the officers to enter and search his car. So, in other words, it's our position that that is not consent that is given freely and voluntarily. Thank you. Well before you. In case if we do get to the sentencing issue. Yes. Does this case really present the unusual circumstance of no comparators, because when I noticed how the PSR said no minor role, then there was no objection then you got an out of time objection but the out of time objection. Your client. I don't know if it was you a press as a council specifically said here are the comparators, the guy who put it in the car. And I forget what the other fellow did the guy who put in the car and then the guy who was going to be candidate. So, in your argument objecting to the PSR. This was not the hypothetical difficult case this was here are the two people, and then it would just be well did the district court commit clear error, saying that Morris isn't substantially less culpable than the two people he's pointing to. So I've been confused as to why it seems like both parties here are trying to say this has to be the difficult hypothetical. Do you remember, do you remember the record here and wasn't it the fact that comparators were identified. Well, certainly. I mean I wasn't Council but recalling the reading of the, the, the, the sensing transcript. Council very clearly argued that that the comparison can be made. And along with all the other factors you have more than just the guy who put the drugs in the car in one city because you're somebody, somebody was in the originating city. No, I know but I guess what I'm asking you is for the district court to have to dive into a fact dispute about the PSR. There was the objection, and it pointed to two people and I'm not, I'm not sure you'd be arguing now or are you arguing that Morris is substantially less culpable than the two people that Morris pointed to, to ask for the reduction. Um, well, on appeal what I'm arguing is that, that, that, that, because the fact finding was never made. Yes. So you want to go back. You want to get back and have fact finding done correct correct we're not standing on, on, you know, on that there definitely that he's entitled to the role of the minor role reduction, we're simply arguing that that he was entitled to have that determination made and it wasn't. And that, and that in on this record. You can't say that, that it wouldn't apply because you have, you know, the factors he, you know, he exercised no decision making authority. He was. He made. He had all he did was drive a car didn't even know what the drugs work so he said he didn't put them there someone else did etc. Thank you. You're welcome. Have you finished Mr. Yes, I guess I am. Okay. Yes, Your Honor, may it please the court for Phillips for the United States. This court should affirm the district court, and all respects I want to start with the motion to suppress issue it. It's the central issue in this case the district court did not air and denying that motion to suppress because Mr. Morris's interaction with the deputies was consensual, or in the alternative reasonable suspicion had developed. By the time this became a, you know, Terry V Ohio applicable seizure. Okay so Mr Phillips you're not pressing the position you took in the brief that this was just police quote waving at a citizen. No, Your Honor, I do not want to start with that initial encounter and talk about that, making contact by flagging down or waving Mr Morris. I think that when you look at the beginning of this encounter and and see how officers make contact with Mr Morris. All the circumstances are unexceptional in the sense that they fit neatly with a parked car scenario except for the fact that as officers began approaching Mr Morris started to pull away so the officers flagged him down right so what case, what case do you have that stopping a moving vehicle is not a seizure I know you cite that a second circuit case, a good buddy. You know there they were plainclothes policemen so there's no show of authority at all so what's the case where actual policemen as as in the mind of the driver flag a car down and that's not a seizure. Well, Your Honor, we, we did cite that second circuit case there's another unpublished second circuit case mind you in a footnote in the brief, where there is a law enforcement official that actually shows his badge to get a taxi driver's attention, and the suspect to pull, pull over as a result. Both of those were found to be consensual encounters because I think it's important. Your Honors to evaluate this flagging down action in the context of the other facts that we know is officers approach the car, which is they did not block, Mr Morris's exit in any way. There was no brand you're at you're not blocked when a patrol car comes up behind you with it sirens on it. I mean it's not it's not blocking your way on the highway. Let me ask you, I've seen this happen I, I may have been victim to it once. Sometimes there are officers outside their patrol cars on the side of the road with a radar gun in their hand. When the radar gun show someone speeding actually point to that car and make a motion to pull over. There's no sirens they're not in their vehicle is that a seizure. I think again Your Honor it's very fact specific in that circumstance you're on a road going, obviously, over the speed limit, and it has all of the defining characteristics of a, of a stop, except for the fact that there's no lights behind you in the rearview mirror here it's moving at a very slow rate of pace through a parking lot, and you have an officer, using his hand to get the defendants attention. And, you know, I think it begs the question how else do you get a moving motorist attention the windows could be rolled up, there is a windshield in the way of verbal requests, just will not be heard so I think this flagging down motion is the most sensible way to get a driver. I agree with that but it's sure sounds like you're stopping someone's movement. And you may have a basis for doing so, but but it seems to me, I mean, so you think it turns on the fact that it's a parking lot, and he's not going fast. I think that I think those are characteristics that separate it from a more typical traffic stop use of sirens or not, and I think a telling sort of hypothetical here is what if Mr. Morris have been walking from his car to the gas pumps is where he said he was going right, I don't think there'd be much of an issue. If they come out well I know police can encounter pedestrians, obviously on the street you can go up to someone's pedestrian, you know, come across the street to my side. Do any cases say that's address that and say that's not a seizure because to me that's that this isn't just walking up to a pedestrian, it's, it's telling that pedestrian to stop walking and move to in the officer's direction. Absolutely, your honor and there are a couple cited in the government's brief both the circuit cases one published one not that deal with this in the context of a walking pedestrian or someone standing in a public Well I've read that case I think it's the one out of El Paso with the, the storage and I don't see where the police they are, you know, motion for him to change where he's going but but anyway, I mean the ultimate question is what a reasonable person have felt free to leave in other words free to keep driving through the officer holding up his hand. Yeah, you're saying a reasonable person would have thought you can blow by those, those that group of officers and just go on your merry way. I really find that hard to believe I do. Yes, your honor and what I want to do is I want to point out just again that that they're not exactly blowing through them because they're not blocking his his passage, but I do, I do want to talk about since we're at this at this point talk about reasonable suspicion. Let me ask one last question on this seizure issue, because it's hard reading a dry record. You know, without being in the courtroom and seeing what was the gesture in your view I mean I, I know it's hard to maybe ask you but then you're not the record but what type of gesture was it that the officers made in your based on your understanding of the testimony. My understanding will be no better than the courts candidly all I've got is a dry record as well but but I think that we can all be informed by a common sense understanding of what flagging down mean something akin to what a hitchhiker might do right not a not a command to stop. There's no indication there was any verbal verbal, you know, stop, stop, said by the officers at the time. And then also, you know, the actions that follow. I think inform what this flagging down motion meant what it was, which is a consensual encounter until, you know, until deputy But that, that's kind of me it's going to make it hard for you now to pivot and say well they weren't just waiting Adam because in fact they had suspicion, and this was a reasonable suspicion. So I'm going to be discomforted but but you may tell me you can argue both at the same time. If you if the government can elicit testimony from officers under oath 1234 we didn't have reasonable suspicion. And then on the brief they describe it as being waived at, but now the alternative argument is even though the court didn't reach it. Actually, they did have reasonable suspicion is that what's why would we reach that in the first instance or is that most that argument one we would vacate remand for. I think you can reach it in the first sentence and then I want to talk about why the record doesn't prevent that from anything the officer said but I think this court can reach it in the first instance I think it's unremarkable for for the Fifth Circuit to affirm a motion to suppress on grounds, other than what the district court or the magistrate judge found. And you have a case where we did that where the government under oath disclaimed that. And then in the brief to us. They described it oppositely. Your Honor, I don't think that it's described oppositely or disclaimed it's argued in the pre hearing briefing. Well, Detective Thorpe said no I didn't have reasonable suspicion. And then your description was the police waived at a citizen. It doesn't sound like it's a reasonable suspicion detention. Yes, if you take a step back I think those comments come on on cross examination about the whether Mr. Deputy Thorpe or any of the other officers suspected criminal activity I think first it's important as a legal matter to think of reasonable suspicion as an objective standard, to the extent that the officers ultimate legal conclusion those magic words reasonable suspicion have very little weight in this court's mouth. I guess I'm just asking you do know the case where a circuit court has said yes reasonable suspicion when the government's argument was with supporting testimony by police under oath. We didn't have it. Do you can you think of a case. No, Your Honor, but again I want to quibble a little bit with the idea that the government's argument was no reasonable suspicion again at the pre hearing briefing discusses reasonable suspicion. If anything, that the focus shifts the consensual encounter at the hearing perhaps you're still discussing the circumstances that would give rise to an objective finding of reasonable suspicion, and also thank your honor, in terms of the officers comments it's important to, you know, these officers are not legal scholars when they talk about, I didn't suspect criminal activity and all likelihood they're talking about I didn't feel comfortable arresting the man at that point because I didn't know for sure if he was doing anything wrong you have one of the officers Your Honor talk about how he had a hunch now that word has significance in the Court of Appeals right and in the law as a hunch being insufficient, but to this individual suspicion is a hunch is thinking something might be a ride. I think it's it's dangerous to put too much weight on these comments from officers, when the video camera the body camera shows, obviously, they're approaching Mr Morris because I think something is amiss at his vehicle. So, you have to be articulable articulable suspicion Yes, Your Honor, and I think you have that in this case and I want to discuss why. What was the articulated the articulation here. Was it based on evidence. Yes, Your Honor, there are there are really three things that officers know before and they all work together before they even make contact with Mr Morris before the flagging down motion occurs, and it's very similar to flowers in this instance, you've got Mr Morris parked in a unusual place in the parking lot and the deputies to a man testify that we don't see passenger cars back there there's there's a place in the parking lot for passenger cars park, we don't see them back behind the trucks and with the trucks and again, this is described as a very high crime parking lot it's a defined bounds, similar to the area and flowers, it's so high crime drug activity is mentioned multiple times that it warrants a designated foot patrol nightly I don't know about my reading of it is they exhausted all the reasons they might have had a suspicion. They might have been entering trucks, or something like that but after they talked to him for a while and got a clear license plate. Nothing else. I don't I don't see how the suspicion. If there was one had lasted that long. Yes, Your Honor, I think the suspicion only heightens as they make contact with Mr Morris. Again, if, if the courts concerned about a potential seizure point being the flagging down then we will not consider the comments made after that but when they speak with Mr Morris if anything the suspicion heightens right he gives a travel description that is entirely consistent with courier activity, he gives a very inconsistent explanation for what he was up to you know he says I'm getting some rest I'm sleeping, but also his explanations are dissonant and really don't stack up so the suspicion heightens once they make contact with Mr Morris I think that's a pretty plain and the question becomes, whether there's reason to if, if the flagging down as a seizure, whether they had a passenger car, among all these 18 wheeler stands out like a sore thumb you know is this is this a drug dealer back there conducting business with the 18 wheelers, or not drug conduct your honors but I know it's just common sense, you see a single passenger car among all these 18 wheelers you think it might be some sort of sex trafficking or prostitution going on and that's not something the officers point to but I think it's a common sense inference. So, and again, back to the back of the notion that some of these officers say, I didn't I didn't suspect criminal activity. One they're not legal scholars and to it is ultimately an objective standing if they said I absolutely suspected criminal activity, I was certain there was reason suspicion, of course, this court would not take them at their word on that there would still need to be an objective finding by by the court by the district court, or this court in the first instance given this court's ability to do that to affirm on any basis supported by the record. I want to move now your honors to talk about this stop, as we get to the discussion with Deputy Mike this is the portion that is recorded again. None of this initial interaction with Deputy Thorpe and Deputy font know is recorded, so I want to talk specifically about this consent issue consent to search. And whether the district for committed clear error in its analysis that this was a voluntarily given consent to search for you get there you're, you're not there for just so I understand this, the continuum and where you do or don't ever think he was detained. When the officers do use the expression will let you go. Are you acknowledging he was detained at that point at least. Is your position still both. He wasn't detained they didn't have to have his position, but they did have reasonable suspicion. Yes, Your Honor, my position is, at no point was Mr Morris detained and I'll tell you those comments right there really just in an article way of phrasing a common sentiment in police interviews right I got. But it might be, I mean again it's sort of like just cost was saying if I every now I mean I'll do wave at police they drive by they way back I know that's just a wave. But when they're just as his example they point to me pulling over. So if a policeman says well we want to talk to you, you're going to help yourself out, and if you do will let you go. A reasonable person would think okay right now I can't go. How could that not be what the person would be thinking, if they use the expression will let you go what's the case that says that doesn't mean exactly what it says. I don't have a case to give you that says that's that's not what we do need some cases either for flagged down moving vehicle isn't a stop or telling someone, if you do the following will let you go that's actually not being not let go. We need cases for some of these propositions. Yes, Your Honor, we we cited a fifth circuit case regarding an officer telling a suspect in a police interview that don't leave now I'm going to get something I'll be back. And, you know, that was not found to be a detention, and I think again what you've got here is a sentiment that comes up in many interactions, and that is a, you know, I've got some questions, the sooner you clear this up the sooner you can go about your way the sooner will be done with you phrased and artfully but it does not justify reversal under the clear air standard again right multiple reasonable interpretations of the significance of a piece of evidence precludes reversal on appeal under that deferential clear air standard because this is a factual finding, not a legal one, and the circumstances surrounding this stop beyond that, none of them suggest undue coercion, you know the officers don't brandish any firearms at any point they don't restrain Mr Morris physically anything like that and although they asked for consent, multiple times, that's in the context of what's going on here, which is they're unable to get a clear answer from Mr Morris, so I think that officers, they're entitled to seek that definitive answer, one way or another, under the circumstances, and, you know, this court would not want an officer interpreting ambiguously a consent to search. And so, you know, for that reason, these follow up attempts are not coercive they're just an effort to get the answer the only question of legal significance correct is, is whether you will consent to a search of your vehicle or not and Mr Morris has been ambiguous and cagey throughout this entire exchange gesturing to the vehicle, inviting officers to What about the comment. There's a comment I've seen the video where the officer says suggestion or you've got nothing to hide. If you're innocent, let me search and I thought we have case law saying that can be a coercive tactic. The cases that I'm aware of regarding that and these kind of lead into Judge Higginson's question as well about these sort of comments that sort of forcefully explain the benefit of cooperation. We cited a case in the brief Williams, where an officer approach individual to public terminal airport bus stop something to that effect, and said, you know, can you mind if I search your person guy said you know well you know I don't know and he said, well if you don't have any drugs on you you got nothing to hide and that was not found to render the stop coercive. There's another case Your Honor. If I can find the citation here. Before you do it because your time is running out. Let's say you are persuasive on any of the multiple theories, and we do get to the sentencing, would you agree with it doesn't really present the counterfactual one that the USA. Do you agree with that. Yes, Your Honor, it's, there are individuals identified their names may not be given, but there you know there is the district court never looked at them the district court went off on this we just can't identify. But the, but the defendant had actually identified the two he wanted to be compared to. And then it looked like the assistant US attorney responding to the PSR objection said, well no couriers are always essential and then it's sentencing the government says oops that was wrong. Now, but we've got a case that no one knows what to do. I just, if you if, would we at most, at best, have to vacate remand so there can be the comparison to the two people Morris wanted to be compared to. No, Your Honor, a couple reasons why. One is the principal side in our brief that this sort of explicit analysis is not required as long as the record provides a basis for denial of that that minor participant reduction, and here it does but there were factual findings made, Your Honor, specifically when defense counsel suggested that Mr. Morris did not understand the, the scope and structure of this scheme the district court very, very pointedly said do we not think he did not understand the scope and structure, you know he has signed up for, and the only individual identified that has signed up for a transnational scheme right Mr Morris by definition of his conduct knows he's carrying drugs from the border to the east coast, the other individuals identified, Your Honor, and I'm sort of winning my own argument at this point just report does not get this explicit to be clear. The other individual identified, we have no basis to say that they similarly understood the scope and structure so at best. I don't see how you ever get to a point where Mr Morris can be found to be substantially less culpable in those two individuals, it seems like a remand would be a, a improper and a waste of time you're on it began to. And with that I want to, I want to thank the court. Thank you. Thank you, sir. Sir, I'm really five minutes for. Hello. I just point out a couple things. Regarding inconsistent statements not deputy corporal Matt agreed that none of the answers that Mr Moore gave were inconsistent that's a record page 158. And one also note that the district court finding that this was a consensual encounter was a finding that went only to the waving of the car down the court never addressed, whether it continued to be a consensual stuff, even though that is what the council argued that and and the objections. So, so there's, there's never been a finding whether all that activity, take him out of the car and all that converted the stop into one that was one in which Mr Morris was not free to leave. If the government originally have alternative arguments, this we had reasonable suspicion and then it just sort of went one route, and no one ever came back and tied the loop, and the alternative. Is that what happened in the government did make an argument in its motion in its response to the motion that there was reasonable suspicion, based on the fact that the car was parked a certain way. They added another thing that says, you know, whatever happened with that no one ever the witnesses disclaimed it, and then it wasn't raised in any type of closing argument and the discord just went. Is that essentially what happened it became a loose strand. Right, well I think it's near the end. After the evidence was adduced at the hearing, the, the USA did make a comment about there being reasonable suspicion. The argument is I recall was based on the fact that only a person, a person who had something to hide would give answers that were not suspicious to the questions by the police. That, that was the argument. I know that you couldn't sell the court on that argument, but as I recall that was that was about the limit of their argument. Okay, thank you. And I was just thinking about added by I know it's a second circuit case. But it just dawned on me that it was an ice cream truck and even a, even a small child could wave down an ice cream truck. I know that I used to. But unless the court has any other questions. I will conclude. Thank you. Okay. Next case. We are good today.